Chief Justice Robertson
delivered the opinion of the court.
Foweer sold to Holland a tract of land and executed to him his bond for a title.
Rolland sold the land and assigned Fowler’s bond to Woodyard, who took and retained possession, in *429 consequence of his purchase, and under Fowler’s .title.
Afterevicliont tak^Mter under ad-ver°e title, by
Some years afterwards, Woodyard still being in •possession, Cravens obtained a judgment in ejectment, against several persons, who held under Fowler’s title, other parcels of land than that purchased and occupied by Woodyard, but Fowler’s title to which, was the same which he held to the land sold to Woodyard.
After this judgment, Woodyard, who was no party to it, and could not be disturbed or directly affected by it, purchased Craven’s title covering the land, which he had bought from Fowler, and sued Fowler" on his title bond, and obtained a judgment for damages, which he enforced.
This suit (ejectment) was then brought by Fowler, to recover restitution of the land from Woodyard, The notice was served on Stewart, the tenant of Woodyard.
After service, Cravens made application to the court, to be permitted to enter himself a defendant, which was resisted by Fowler. But the court allowed Cravens to be made a defendant, to which Fowler excepted.
By relying on his own title, Cravens succeeded, and obtained a verdict. To reverse the judgment rendered on this verdict, this’ appeal is prosecuted by Fowler.
Woodyard might have denied Fowler’s title and taken refuge under- that of Cravens, if Cravens had ever obtained a judgment in ejectment against him. If Woodyard had been a party to the judgment which Cravens had obtained against others holding under Fowler, the judgment might have been considered as an eviction, and Woodyard then-could have submitted and taken shelter under Cravens, by purchase or otherwise.
Or if Fowler had assented to the purchase by Woodyard, from Cravens, Woodj'ard might have attorned to Cravens and held adverselv to . Fowler, otherwise the attornment is illegal, and Woodyard will not be permitted to dispute Fowler’s title. “The *430 attornment of a tenant, to any stranger, shall be void,unless it be with the consent of the landlord of such tenant, or pursuant to, or in consequence of fhejudgment of a court of law, nr the order or decree of a court of chancery,” I. Digest, 316.
Atioriiment oí tenant to any stronger, is void, unless with con-sen! ol iand-lord, or in con-equence of ajudgment, order or decree of a court.
One who enters under an executory contract of purchase, is as much bound to be true and constant to title of his vendor, as if he had entered as tenant.
Vendee having recovered his purchase money, is under every obligation of law, & good faith, to restore possession of land to vendor. Cannot defend himself by gainsaying vendor’s title, or pleading that of a stranger.
*430 But there was no judgment, or order, or decree of' any court, against Woodyard, for the land. Wherefore, as he entered under Fowler, he cannot hold adversely to him, nor dispute his title, unless he attorn-ed to Cravens with the “consent” of his “landlord,” Fowler; for one who enters under an executory contract of purchase, is as much bound to be true and constant to the title of his vendor, as he would be if' he had entered in form as a tenant.
There was an attempt to prove that Fowler assented to Woodward’s purchase from Cravens. But only one witness was introduced to prove it. He is the son-in-law of Cravens, and was his agent in making the contract with Woodyard. His testimony is vague and unsatisfactory. He states that Rout, who was Fowler’s general land agent, waived any objection to the purchase by Woodyard, after it was made, although he was dissatisfied with it, when he first' heard of it.
But the testimony of this witness, (Boner) is overwhelmed by the positive evidence of Rout himself, and several other witnesses, who established, both negatively and affirmatively, perfectly to our satisfaction, that the purchase was made without the sanction of Fowler or his agent, and against their will.
The purchase, therefore, from Cravens, cannot affect the relation which had subsisted between Fowler and Woodyard, as vendor and vendee, or landlord and tenant.
Woodyard having recovered his purchase money from Fowler, is under every obligation of law and of good faith, to restore to him the possession of the land; and, therefore, he could not defend himself, directly nor indirectly, by gainsaying Fowler’s title, or pleading that of Cravens.
It results, necessarily, that the circuit court erred in permitting Cravens to defend the suit on his own *431 title, which, as between Fowler and Woodyard in this suit, was an outstanding *itle.
Crittenden and U. B. Chambers, for appellant; Bayne, for appellee.
By proving that Woodyard entered under his title, Fowler would be clearly entitled to restitution, unless Woodyard could prove, either that he had been evicted, or that Fowler had assented !o his attornment, or that, ascertaining that Fowler had no title, he had abandoned the possession, and notified Fowler that he had done so, belore he took a deed from Cravens. See Bullock vs. Bemis, III. Marshall, 287. He cannot otherwise be protected, by any other and adverse title. And as he could not plead any other title himself, nor dispute that of Fowler, the court ought not to have suffered another, who was no party, to do it for him.
Wherefore, the judgment of the circuit court is reversed, the order making Cravens a defendant set aside, and the cause remanded for proceedings de novo, to commence from the return of the common order, and to be conducted in conformity to this opinion.